# UNITED STATES DISTRICT COURT

**EASTERN** DISTRICT OF **CALIFORNIA**

---oOo---

UNITED STATES OF AMERICA

v.

**WILLIAM THOMAS YOUNG**
(Name of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 3:10-mj-0030CMK

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about 07/08/2010 in Shasta County, in the Eastern District of California defendant(s) did, (Track Statutory Language of Offense)

1. Did operate a motor vehicle without due care at a speed greater than which is reasonable and prudent considering traffic, road conditions and road character, AND

2. Failed to comply with the directions of a traffic control device to wit, roadway markings, AND

3. Failed to comply with restrictions of Driver License to wit, not wearing prescription glasses as required, AND

4. Did operate a motor vehicle while suspended/revoked

In violation of (#1) Title 36, Code of Federal Regulation, Sections 4.22, (#2) 4.12, (#3) 4.2 assimilating California Vehicle Code sections 14603 and (#4) 14601.1(a). I further state that I am a(n) U.S. National Park Ranger and that this complaint is based on the following facts:

**See attached incident report(s) submitted by ranger(s) : Westpfahl**

X  Continued on the attached sheet and made a part hereof.

Signature of Complainant: **Gary Panich**
National Park Service

Sworn to before me, and subscribed in my presence

Date: Aug 24, 2010           at      Redding, CA
                                     City and State

Craig M. Kellison

U.S. Magistrate-Judge

Name and Title of Judicial Officer           Signature of Judicial Officer

# UNITED STATES DEPARTMENT OF THE INTERIOR
## NATIONAL PARK SERVICE
## SUPPLEMENTAL INCIDENT RECORD

FORM 10-343A

| Incident Number: 10-1645 | Type: Driving under the Influence |
|---|---|

**ASSIGNMENT:** On July 8, 2010 at approximately 1643 hours while on patrol for the National Park Service within the jurisdictional boundary of Whiskeytown National Recreation Area Ranger Martin and I observed a Honda bearing California registration of 4GG5262 traveling southbound on Kennedy Memorial Drive. As the vehicle approached the intersection of Kennedy Memorial Drive and Paige Barr Road, it crossed the double yellow line almost striking a vehicle in the opposing lane causing that driver to take evasive action. I followed the Honda across Davis Dam and noticed that it crossed the double yellow line for a second time. I estimated the driver's speed here to have been about 25 (by pacing) when the prime facie limit at this location is 35 m.p.h. I initiated a traffic stop at the Davis Gulch trailhead pull out with full emergency lights and a short blast of the siren. The vehicle immediately pulled off the roadway and into the pull out.

**NARRATIVE:** Upon contact with the driver, I detected a strong odor of an alcoholic beverage within the vehicle. I identified myself and the reason for the stop. The driver stated that he was unaware that he had crossed the double yellow line. I then requested to see his driver's license, registration and proof of insurance. He retrieved his driver license from his wallet and then reached into the glove box and retrieved his registration. His driver license identified him as William T. YOUNG. He then looked at me as if to show me that he had completed the tasks that I had asked. I reminded him that I needed to see his insurance. He stated that he had given it to me but I corrected him and told him that he had given me his registration. When YOUNG looked at me, I noticed that the sclera of his eyes were reddened slightly and watery in appearance. In addition, I noticed that the name on the registration was different than the driver's. I asked YOUNG if he owned the vehicle. He stated that it belonged to a friend. I asked the passenger if he was the friend. YOUNG stated that the passenger was his son. When I asked him these questions, he stopped looking for the insurance and turned to look at me. After being asked again for the insurance, he returned to looking for it. With the help of his son, he produced a valid insurance card. I returned the card to him and told him to wait in the vehicle.

I called Ranger Sarcinella to come to my location in anticipation of conducting field sobriety tests. Dispatch then informed me that YOUNG was suspended/revoked for a failure to appear status.

Upon returning to the vehicle, I asked YOUNG if he had consumed any alcoholic drinks recently. He stated: "**I had one Tilt, maybe half a Tilt.**" I was unsure about the brand and asked him to clarify and he stated: "**That's an alcoholic beverage.**" When asked how long ago he had it he told me about an hour and a half prior. I asked the passenger if he had consumed any alcohol and he stated that he didn't. I told YOUNG that I thought more than one beer had been consumed based on the strong odor of alcohol and asked him again how much he had consumed. He stated: "**I've had a Tilt. A 16oz Tilt.**"

At approximately 1648, I told YOUNG that I was going to conduct a field sobriety test and asked him to step out of the vehicle. He stated: "**OK.**" As YOUNG was getting up out of his seat to exit the vehicle, he lost his balance and sat back down briefly before attempting to exit once again. As he exited the vehicle, he placed his hands on the side of the car for stability and upon reaching the back left corner of the vehicle, stopped to regain his balance.

| Reporting Officer's Name | ID # | Supervisor's Name | ID # |
|---|---|---|---|
| Erik Westpfahl | 2639 | Mike Martin | 1018 |
| Reporting Officer's Signature | Date | Supervisor's Signature | Date |
| [signature] | 7-11-10 | [signature] | 7-12-10 |

Page 1 of 4

# UNITED STATES DEPARTMENT OF THE INTERIOR
## NATIONAL PARK SERVICE
## SUPPLEMENTAL INCIDENT RECORD

FORM 10-343A

| Incident Number: 10-1645 | Type: Driving under the Influence |

I directed YOUNG to walk from the vehicle to a shaded spot near the public restroom as that was the most level spot to conduct the series of tests. Although the ground surface was dirt with sparse gravel, he appeared to be "high-stepping" unnecessarily and did stagger as he walked.

Once in the shade, I asked him he had any medical conditions that I needed to be aware of. YOUNG informed me that he was under the care of a physician for bi-polar disorder. I then conducted the Standardized Field Sobriety Tests in accordance with the National Highway Traffic Safety Administration (NHSTA).

### FIELD SOBRIETY TESTING

Prior to administering the Horizontal Gaze Nystagmus, I asked YOUNG if he had any problems with his eyes. I noted that he was wearing a bi-focal pair of glasses and asked him about it. He stated that they were reading glasses and that he didn't have his prescription glasses with him. When asked if he was near or far sighted, he stated that he was far sighted. I asked him to then touch the tip of my pen which I held 12-15 inches from him at eye level; he did so without difficulty. Then in accordance with NHSTA testing procedures, I asked him to remove his reading glasses which he did. I asked him to then again touch the pen tip which he did without difficulty.

*Horizontal Gaze Nystagmus (HGN):* YOUNG had to be instructed several times during this test to both follow the pen with his eyes and to not move his head. A check of YOUNG's eyes revealed equal pupil size and equal tracking. The following clues were observed:

- Lack of smooth pursuit in both eyes (1 clue each).
- Distinct and sustained Nystagmus at maximum deviation in both eyes (1 clue each).
- Nystagmus prior to the onset of 45° (1 clue each)

This equaled a total of six out of six clues of which four are needed to suggest impairment.

*Walk and Turn (WAT):* During the instructional phase, YOUNG had to be reinstructed to return to the starting point with his right foot in front of his left, touching heel to toe. After having been told originally, YOUNG assumed the starting position and then lost his balance and broke from that position by standing normally. When I told him to reset as I had originally instructed, he placed his left foot in front of his right which is opposite the instructions I gave. He eventually reset himself correctly with instructions and direction. The following clues were observed:

- Looses balance during the instructional phase (1 clue).
- Starts walking too soon (1 clue).
- Misses heel to toe: On the return, steps 2/3 and 8/9 (1 clue).
- Raises arms from sides while walking (1 clue).
- Steps off the line: Between steps 6/7 on the forward walk (1 clue).

| Reporting Officer's Name | ID # | Supervisor's Name | ID # |
|---|---|---|---|
| Erik Westpfahl | 2639 | Mike Martin | 1018 |
| Reporting Officer's Signature | Date | Supervisor's Signature | Date |
| [signature] | 7-11-10 | [signature] | 7-12-10 |

# UNITED STATES DEPARTMENT OF THE INTERIOR
## NATIONAL PARK SERVICE
## SUPPLEMENTAL INCIDENT RECORD

FORM 10-343A

| Incident Number: 10-1645 | Type: Driving under the Influence |

- Turns improperly (1 clue).
- Takes wrong number of steps: 12 steps on the return (1 clue).

This equaled a total of seven out of eight clues of which two are needed to suggest impairment. Although not a recordable clue, YOUNG failed to count his steps out loud as instructed.

**One Leg Stand (OLS):** During the instruction phase, YOUNG's demeanor began to change as he expressed an irritated tone. Once he began the test sequence, he raised his right leg. The following clues were observed:

- Sways while balancing (1 clue)
- Uses arms for balance (1 clue).
- Puts foot down (1 clue).

This test was terminated for YOUNG's safety per NHSTA guidelines due to him placing his foot down for balance a total of four times in 16 seconds. He placed his foot down for balance at 7 seconds and again at 13, 14, and 15 seconds. YOUNG also failed to count out loud as instructed and did not extend his leg and point his toe forward as instructed. Instead, YOUNG lifted his leg with a bent knee leaving his foot approximately 3-4 inches off the ground.

**ACTION TAKEN:** According the NHSTA studies, the inability to complete all three tests indicates a probability of at least 83% that an individual is intoxicated above the per se limit. Based on YOUNG's inability to complete the SFSTs, the decision to arrest YOUNG was made. Ranger Sarcinella was made aware of my intent as I obtained the portable breath test device. YOUNG was instructed to blow into the device which he did. The result was .067 BrAC.

YOUNG was then questioned as to the medications he was taking. He stated that he was taking Prozac for bi-polar disorder and an unknown type of antibiotic for a tooth infection.

At approximately 1703, YOUNG was placed in handcuffs which were checked for fit and safety locked. As I was applying the handcuffs, YOUNG's arms became rigid and he would not separate his hands as instructed. I told him seven times to relax his arms to which he stated: **"I am. You'd better have respect!"** Prior to searching YOUNG, I asked him if he had any drugs, needles or knives when he interrupted me and stated: **"I have none of your shit. Now I'm getting fucking pissed; the way you disrespect me."**

A search incident to the arrest of YOUNG produced no contraband. His wallet contained $35 in U.S. currency which was counted by Ranger Martin and myself in front of YOUNG and placed into a bag which was eventually turned over to the jail staff.

Since the passenger's driving status was also suspended, Ranger Sarcinella secured the vehicle in place and transported him to the visitor center to await the legal owner's arrival to retrieve the vehicle.

| Reporting Officer's Name | ID # | Supervisor's Name | ID # |
|---|---|---|---|
| Erik Westpfahl | 2639 | Mike Martin | 1018 |
| Reporting Officer's Signature | Date | Supervisor's Signature | Date |
| *[signature]* | 7-11-10 | *[signature]* | 7-12-10 |

Page 3 of 4

# UNITED STATES DEPARTMENT OF THE INTERIOR
## NATIONAL PARK SERVICE
## SUPPLEMENTAL INCIDENT RECORD

FORM 10-343A

| Incident Number: 10-1645 | Type: Driving under the Influence |

At 1710, I began my transport of YOUNG to the Shasta Regional Medical Center for a blood draw. Lab technician B. Uriel performed the draw at 1734 (my watch – 1740 hospital clock) I observed Uriel clean the area for the blood draw using an aseptic technique and waited for the rubbing alcohol to dry prior to insertion of the needle into the left anticubital area. Once the draw was complete, Uriel secured the packaging in evidence tape and gave it to me.

At 1744 I began my transport to the Shasta County Jail arriving at 1750. Once at the jail, I read YOUNG his Miranda warnings; he refused to waive his rights. YOUNG was then turned over to the jail staff.

**EVIDENCE:** Blood evidence to be delivered to the state crime lab in Redding California for analysis on Monday July 12th.

**INTERVIEWS:** None

**DISPOSITION:** Ranger Martin informed YOUNG that he was to appear in U.S. District Court, 2986 Bechelli Lane, Redding CA on August 24th at 0900 hours. Ranger Martin explained that failure to appear on the date and time specified would result in a federal arrest warrant being issued.

**CHARGES PENDING:**
1. 36 CFR 4.22 Unsafe operation
2. 36 CFR 4.12 Traffic control devices
3. 36 CFR 4.23(a)(1) Operating motor vehicle under influence of alcohol
4. 36 CFR 4.2 assimilating CVC 14603 Violation of License Restrictions
5. 36 CFR 4.2 Assimilating CVC 14601.1(a): Operating motor vehicle after suspended/revoked

Nothing follows:

| Reporting Officer's Name | ID # | Supervisor's Name | ID # |
| --- | --- | --- | --- |
| Erik Westpfahl | 2639 | Mike Martin | 1018 |
| Reporting Officer's Signature | Date | Supervisor's Signature | Date |
| | 7-11-10 | | 7-12-10 |

Page 4 of 4